IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:16cr49 |
| | ) | |
| v. | ) | |
| | ) | |
| VERNON MICHAEL NORVELL, | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, John F. Butler, Special Assistant United States Attorney, and Andrew Bosse and Joseph E. DePadilla, Assistant United States Attorneys, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guidelines range to be a term of 188 to 235 months' imprisonment. Count One carries a mandatory minimum term of 120 months. The Probation Office calculated a Total Offense Level of 35 and a Criminal History Category of II. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with defense counsel and the Probation Office. The government does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation, and has no outstanding objections to the PSR. The government understands that the defendant is withdrawing all three of his objections.

For the reasons outlined below, the United States respectfully submits that a sentence at the low end of the calculated guidelines range is appropriate in this case and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

### I. Motion

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b) and based upon the terms of the binding plea agreement in this case, to grant a one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

### II. Background

On January 12, 2016, the defendant was charged by criminal complaint. Docket No. 3. The United States filed a two-count criminal information on March 30, 2016, charging the defendant with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1) and (h). Docket No. 40. The defendant pleaded guilty to both counts of the criminal information on April 4, 2016. Docket Nos. 44-50. The defendant is scheduled to appear before this Court for sentencing at 11:00 a.m. on Tuesday, July 19, 2016.

### III. Position on Sentencing and Argument

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'"

*Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

    A)    <u>Nature and Circumstances of the Offense</u>

The nature and circumstances of the offense are concerning for a number of reasons. First, this is a defendant who was convicted and sentenced in this Court for the same type of crime. In 1994, Judge Morgan sentenced the defendant to 210 months' imprisonment for Distribution of Crack Cocaine. The defendant has shown by his actions that that significant sentence had no deterrent effect on him.

The defendant returned to selling drugs several years after he was discharged from supervised release. Having learned from his mistakes the first time around, the defendant worked at a significantly larger scale, and was more successful at evading law enforcement, the second time. At the height of this conspiracy, the defendant was a significant source of supply for cocaine in the Hampton Roads region. He partnered with his wife to attempt to make hundreds of thousands of dollars in drug profits appear legitimate through a series of complex financial transactions. The defendant took business classes at a local community college and, with his wife, used a popular local business to attempt to hide the illicit profits of his cocaine trade. The defendant and his wife transformed G's Cake Shop, a well-established Virginia Beach business, from a popular source for wedding cakes and other baked goods to a laundry for

drug proceeds. When federal agents executed a search warrant there, they found boxes of Duncan Hines cake mix and scant financial records. In addition to using the business as a front for money laundering purposes, the defendant also used it as a site for drug deals—multiple confidential defendants described purchasing cocaine from the shop.

In addition to regularly sending money to an off-shore account in Curaçao, the defendant and his wife also opened 11 bank accounts, structured cash deposits to avoid triggering federal reporting requirements, and made hundreds of inter and intra-bank transfers to disguise the defendant's drug proceeds. From 2012 through 2014, the defendant and his wife laundered nearly three quarters of a million dollars in unexplained income. In 2014 alone, the defendant and his wife made over $322,000 in deposits into their accounts, yet simultaneously claimed in tax filings a net loss averaging over $6,500 a month.

The defendant and his wife also structured the purchase of a family member's house to disguise the source of additional cash generated by the defendant's cocaine dealing. They purchased the house, in an exclusive neighborhood in Portsmouth, for nearly half its appraised value, and they made thousands of dollars in off-the-books cash payments before and after the closing to help hide drug money.

This Court sentences many drug dealers each year, but this defendant is especially noteworthy because he was a major source of supply for cocaine across the Hampton Roads region. The scale of his dealings is evident not only from his lake-side house, cars, motorcycles, and expensive clothing, but from the amount of cocaine he admits to trafficking—more than 57 kilograms, or 126 pounds, of the drug from late 2008 through early 2015. At times, the defendant was moving between sixty and seventy thousand dollars' worth of cocaine a week and making kilogram-level transactions at $46,000 per deal. The defendant largely kept himself

several steps removed from the street-level dealers who repackaged and sold his product. What makes his conduct even more aggravating is his first-hand knowledge of how dangerous the drug he sold could be. On February 13, 2013, the defendant was with a friend and fellow dealer, J.L., when he witnessed J.L. overdose and die from ingesting cocaine. Despite witnessing that cocaine-related death, the defendant would go on to sell the drug for another two and a half years. He even picked up the business that J.L. left behind.

      B)      <u>History and Characteristics of the Defendant</u>

The defendant is 43 years old. He was raised by his parents in a middle-income area of Portsmouth. PSR ¶ 49. Although his father was an alcoholic and abusive towards his mother, the defendant was able to maintain a close relationship with them until their deaths. He has been married three times and is the biological father of three children: a 13- and 8-year-old from his second marriage and a two-year-old from his current marriage to his co-defendant. PSR ¶¶ 52-54. The defendant's brother and sister-in-law will care for his youngest child during any term of incarceration that the defendant and his wife receive. PSR ¶ 54.

The defendant used marijuana and cocaine on a recreational basis in the past, but has not used controlled substances for at least two years. PSR ¶ 58. He completed the Residential Drug Abuse Program (RDAP) following his 1994 federal conviction. PSR ¶ 59.

The defendant is a high school graduate, has completed over a year's worth of courses at Norfolk State University, and most recently had been taking business classes at Tidewater Community College. PSR ¶ 60.

While the defendant's criminal history is notable, especially considering that he was previously convicted of nearly the same crime, the government notes that it is dated. PSR ¶¶ 37-40. The defendant has not had a criminal conviction in two decades, and there is no history of

violence or evidence that the defendant is a violent person. These facts contributed to the government's decision not to seek a sentence enhancement through the filing of an information pursuant to 21 U.S.C. § 851.

    C.    <u>Other Factors to be Considered Under Section 3553(a)</u>

The defendant is facing a sentencing range of 188 to 235 months' imprisonment. Ordinarily, a crime this serious after a federal conviction for the same crime would prompt a recommendation for the higher end of the recommended guidelines range. Here, however, the defendant agreed to plead guilty almost immediately after being taken into federal custody. His willingness to take responsibility and his decision to plead quickly saved this Court's time and significant government resources.

The government submits that a sentence at the low end of the guidelines is significant enough to specifically deter this 43-year-old defendant from dealing drugs again. A sentence in excess of fifteen years will promote respect for the law, protect the community, and send the message to others who are using businesses in this community to launder narcotics proceeds that their actions have serious and long-lasting consequences.

## IV. Conclusion

Taking all the Section 3553(a) factors into account, the government respectfully submits that a sentence at the low end of the calculated guidelines range is appropriate and not greater than necessary to reflect the seriousness of this case, promote respect for the law, and afford specific deterrence to the defendant.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:    /s/
John F. Butler
Special Assistant United States Attorney
Andrew Bosse
Joseph E. DePadilla
Assistant United States Attorneys
Attorneys for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
john.f.butler@usdoj.gov
andrew.bosse@usdoj.gov
joe.depadilla@usdoj.gov

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 12th day of July, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

     I HEREBY CERTIFY that on this 12th day of July, 2016, I sent by electronic mail a true and correct copy of the foregoing to the following:

          Karen Franklin
          U.S. Probation Officer
          827 Diligence Drive, Suite 210
          Newport News, Virginia 23606

          /s/
          John F. Butler
          Special Assistant United States Attorney
          Attorney for the United States
          United States Attorney's Office
          101 West Main Street, Suite 8000
          Norfolk, VA 23510
          Office Number: 757-441-6331
          Facsimile Number: 757-441-6689
          john.f.butler@usdoj.gov